# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Manuel P.,

      Petitioner,

v.

Todd Blanche, *Acting Attorney General*;
Markwayne Mullin, *Secretary, U.S.
Department of Homeland Security*; David J.
Venturella*, Acting Director of Immigration
and Customs Enforcement*; and David
Easterwood, *Acting Director, St. Paul Field
Office, Immigration and Customs
Enforcement*,

      Respondents.

File No. 26-CV-3445 (JMB/EMB)

**ORDER**

---

Jason L. Schellack, Autism Advocacy & Law Center, LLC, Minneapolis, MN, for Petitioner Manuel P.

David W. Fuller, United States Attorney's Office, Minneapolis, MN; and David R. Hackworthy, Department of Homeland Security, Minneapolis, MN for Respondents Todd Blanche, Markwayne Mullin, David J. Venturella, and David Easterwood.

---

This matter is before the Court on Petitioner Manuel P.'s[1] Petition for Writ of

Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which

names Todd Blanche, Markwayne Mullin, David J. Venturella, and David Easterwood as

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

1

Respondents.  (Pet. at 1.)   For the reasons explained below, the Court grants the Petition.

## FINDINGS OF FACT

1.      Manuel P. is a 44-year-old native and citizen of Ecuador.  (Pet. ¶ 6; Doc. No. 6-1 at 1.)

2.      On February 10, 2012, Manuel P. entered the United States without inspection.  (Doc. No. 6-1 at 3.)

3.      Also on February 12, 2012, an immigration officer determined Manuel P. inadmissible.  (Doc. No. 6-2.)  Manuel P. was served with a Form I-296 Notice to Alien Ordered Removed/Departure Verification, in which Manuel P. was advised that he was determined inadmissible and that he was prohibited from entering or being in the United States for a period of five years, and a Form I-860 Notice and Order of Expedited Removal. (*Id.*; Doc. No. 6-3 at 1.)

4.      In March 2012, Manuel P. was removed from the United States.  (Doc. No. 6-3; Doc. No. 6-6 at 1.)

5.      On June 4, 2021, Manuel P. entered the United States at the border with his then-teenaged son.  (Pet. ¶¶ 11, 12; Doc. No. 6-6 at 1.)

6.      Within minutes of entering the United States, Manuel P. and his son encountered immigration officials, who detained them.  (Pet. ¶ 12; Doc. No. 6-6 at 1.)

7.      Also on June 4, 2021, immigration officials attempted to reinstate Manuel P.'s prior order of removal, 8 C.F.R. § 241.8(a).  (Doc. No. 6-4 (Form I-871 Notice of Intent/Decision to Reinstate Prior Order); Doc. No. 6-5 (Form I-205 Warrant of Removal/Deportation); *see also* Doc. No. 6-6 at 1.)

8.      Also on June 4, 2021, Immigration officials issued a Form I-205 Warrant of Removal (the Form I-205 Warrant) based on the prior 2012 order of removal.  (Doc. No. 6-5 at 1.)

9.      Manuel P. expressed fear of returning to Ecuador; as a result, and pursuant to 8 C.F.R. § 241.8(e),[2] the Form I-205 Warrant was never executed.  (*See id.* at 2; Doc. No. 6-6 at 1.)

10.     Since this time, Manuel P. has been in withholding-only proceedings.  (Doc. No. 6 ¶ 14.)

11.     During Manuel P.'s brief detention in June 2021, Respondents gave him an A number, and then, shortly after, made a decision to release Manuel P. and permit his entry into the United States.[3]  (Pet. ¶ 12.)

---

[2] Section 241.8(e) provides as follows: "If a[] [non-citizen] whose prior order of removal has been reinstated under this section expresses a fear of returning to the country designated in that order, the [non-citizen] shall be immediately referred to an asylum officer for an interview to determine whether the alien has a reasonable fear of persecution or torture[.]"

[3] Respondents did not provide any documents concerning DHS's decision to release Manuel P., the timing of his release, or the terms of his release (if any).  (*See* Doc. No. 6.) In fact, Respondents' declarant and counsel fail to acknowledge or mention that DHS released Manuel P. at any time.  (*See id.*; Doc. No. 7.)  As a factual matter, the Court can reach only one conclusion: that Manuel P. was released sometime after DHS issued the Form I-205 Warrant on June 4, 2021.  This determination is based on the following evidence in the record: (1) unrebutted factual statements in the Petition (*e.g.*, Pet. ¶¶ 12 (stating that Manuel P. "was detained briefly and then released into the interior [United States]"), 13 (noting that Manuel P. has attended all immigration proceedings and appointments since June 4, 2021); (2) the uncontested fact Manuel P. was not in custody and was instead working in Bemidji when Respondents arrested him in July 2026; and (3) applicable statutory provisions requiring release of non-citizens with final orders of removal after an initial period of detention, 8 U.S.C. § 1231(3).

12.     In May 2022, a United States Citizenship and Immigration Services (USCIS) Asylum Officer found that Manuel P. had not established a reasonable fear of persecution or torture if returned to Ecuador.  (Doc. No. 6-6 at 1–2; Doc. No. 6-1 at 3.)

13.     Manuel P. appealed the immigration judge's decision to the Eighth Circuit Court of Appeals.  *Manuel P.-P. v. Garland*, No. 22-3328 (8th Cir. 2022).

14.     In January 2023, on Respondents' unopposed motion, the Eighth Circuit Court of Appeals remanded the immigration judge's decision back for further proceedings. *Id.*, #5239365 (8th Cir. Jan. 26, 2023).

15.     In March 2023, an IJ reversed the May 2022 IJ finding of no reasonable fear.[4] (Doc. No. 6-1 at 3.)

16.     Since his release from custody on July 4, 2021, Manuel P. has attended all

---

Counsel's decision to completely ignore the fact of Manuel P.'s release on June 4, 2021, and counsel's failure to provide the Court with a copy of any and all orders of release is surprising, and not something the Court has seen counsel do in any other case except in response to Manuel P.'s son's habeas petition, Case No. 26-CV-3448, which was filed on the same day as Respondents' response to Manuel P.'s Petition.  The Court is concerned that this decision may have been part of a deliberate strategy designed to prevent the Court from granting the Petition on the basis that Respondents failed to follow applicable law by arresting Manuel P. without first lawfully revoking an existing order of release.  Of course, Respondents' counsel—David Fuller and David Hackworthy—are officers of the Court who have an ethical duty of candor to this Court.  At this time, the Court declines to address whether counsel's material omissions of Manual P.'s relevant immigration history is a violation of their ethical duties, giving counsel the benefit of the doubt on this case and assuming that these omissions were inadvertent.

[4] Neither Respondents' declarant nor counsel acknowledge this consequential ruling in their filings.  (*See* Doc. Nos. 6, 7.)  Nor does counsel provide the Court with a copy of this decision or any orders from immigration court concerning release pending the determination, appeal, and resolution of this immigration court matter.

hearings in his immigration proceedings.  (Pet. ¶ 13.)

17.    After his release in 2021, Manuel P. moved to and has been residing in Minnesota, where he is gainfully employed and, in fact, owns his own business in the construction industry to support his child and his U.S. citizen granddaughter.  (*Id.* ¶ 14.)

18.    USCIS has authorized Manuel P. to work in the United States, and his work authorization permit is valid until 2029.  (*Id.* ¶¶ 14, 15.)

19.    Manuel P. has no known criminal history in Minnesota.  (*Id.* ¶ 19.)

20.    On July 16, 2026, while staying in a hotel near a roofing jobsite in Bemidji, Minnesota, Immigration and Customs Enforcement (ICE) agents approached Manuel P. and his son in the hotel parking lot and arrested them.  (*Id.* ¶¶ 15, 16, 18; Doc. No. 6-1 at 2–3.)

21.    Manuel P. was cooperative and did not try to flee the arrest.  (Pet. ¶ 15; Doc. No. 6-1 at 3.)

22.    Manuel P. was not shown any warrant during the arrest,[5] and was not actually arrested pursuant to the June 2021 Form I-205 Warrant.  (Pet. ¶ 15.)

23.    During the arrest, ICE agents did not ask Manuel P. any questions about his immigration history or status.  (*Id.* ¶ 15.)

24.    Since his July 16, 2026 arrest, Manuel P. has been detained at the Sherburne County Jail.  (*Id.* ¶ 20.)

25.    On July 29, 2026, Manuel P. filed his Petition for a Writ of Habeas Corpus

---

[5] Respondents do not rebut this fact with either evidence or argument.  (*See* Doc. Nos. 6, 7.)

(Petition).  (*See* Pet.)

26.    On July 30, 2026, the Court ordered Respondents to respond to the Petition by or before 11:00 a.m. on August 3, 2026.  (Doc. No. 3.)

27.    On August 3, 2026 at 11:01 a.m., Respondents filed an untimely response[6] to the Petition.[7]  (Doc. No. 7.)

## DISCUSSION

In his Petition,[8] Manuel P. seeks immediate release, arguing that his arrest and ongoing custody violates the Due Process Clause of the Fifth Amendment, and the warrant

---

[6] Respondents did file the Declaration of DHS Deportation Officer Ivan Sabin before the 11:00 a.m. response deadline.  Sabin, however, does not attest to having personal knowledge around the facts and circumstances of Manuel P.'s arrest and detention; instead, he relies on his "professional knowledge, [his] review of records and systems maintained by ICE in the regular course of business, and information provided by other [unidentified] agents and officers."  (Doc. No. 6 ¶ 3.)  In addition, the Court observes that Sabin has made statements that were false (despite "the penalty of perjury," 28 U.S.C. § 1746) in declarations filed in at least one other matter.  *See Mohamed A. v. Blanche, et al.*, 26-CV-2799 (JMB/DTS), Doc. No. 31 at *4, n.2 (D. Minn. June 18, 2026).

[7] Generally, the Court grants timely requests for extensions of briefing deadlines in habeas matters.  Here, however, counsel made no request for an extension of time to file their response.

[8] In their untimely response, Respondents urge the Court to disregard the factual allegations in the Petition due to a "lack of verification" of the facts alleged in it.  (Doc. No. 7 at 1 n.1.)  In doing so, Respondents appear to misapprehend the verification requirement in 28 U.S.C. § 2242.  The relevant habeas statute requires that an "[a]pplication for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended *or by someone acting on his behalf.*"  28 U.S.C. § 2242 (emphasis added).  Here, Petitioner's attorney, who is no doubt "acting on [Manuel P.'s] behalf," appended a "Verification Pursuant to 28 U.S.C. § 2242," in which counsel verified the factual statements in the Petition.  (Doc. No. 1 at 27.)  The verification requirement in 28 U.S.C. § 2242 has been met, and the Court rejects Respondent's argument to the contrary.

6

requirement of the Immigration and Nationality Act, its accompanying regulations (8 C.F.R. §§ 236.1, 241.3, 287.38), and the Fourth Amendment. (Pet. ¶¶ 30, 34, 43–47, 48–56, 57–60.) For their part, the Federal Respondents argue that Manuel P.'s arrest is authorized under the June 2021 Form I-205 Warrant. For the reasons set forth below, the Court disagrees with Respondents and grants the Petition.

## A.    Right to Habeas Relief

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

## B.    Unopposed Petition

Respondents failed to timely respond to the Petition. Therefore, the Court considers the factual allegations and legal arguments in the Petition to be undisputed and unopposed and, therefore, grants it. *See Rodriguez-Quiroz v. Lynch*, 835 F.3d 809, 822 n.6 (8th Cir.

7

2016) (noting that the government waived an argument by failing to raise it in an immigration appeal); *see also Estephanny P. v. Bondi*, No. 26-CV-198 (ECT/JFD), Doc. No. 10, at *3 (D. Minn. Jan. 15, 2026) (citing *Doe v. Mayorkas*, No. 22-cv-752 (ECT/DTS), 2022 WL 4450272, at *2 (D. Minn. Sep. 23, 2022) (concluding that failure to respond is an express waiver of those arguments or claims)); *Bland v. California Dep't of Corr.*, 20 F.3d 1469, 1474 (9th Cir. 1994) ("When the State's return fails to dispute the factual allegations contained in the petition and traverse, it essentially admits those allegations."), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000). The unopposed verified facts in the Petition compel an order requiring Manuel P.'s immediate release.

### C.    No Legal Authority for Arrest and Detention

In the alternative, the Court also concludes that the June 2021 Form I-205 Warrant cannot justify Manuel P.'s arrest for three reasons: (1) Respondents' argument lacks any legal support; (2) as a factual matter, Respondents did not actually arrest Manuel P. pursuant to the June 2021 Form I-205 Warrant; and (3) Respondents never revoked their decision to release Manuel P., which occurred subsequent to the issuance of the Form I-205 Warrant of Removal.

First, Respondents urge the Court to adopt a novel legal rule that lacks legal support. Respondents contend that a Form I-205 Warrant[9] remains a valid instrument for arresting

---

[9] Immigration law and implementing regulations provide for two types of warrants to authorize immigration arrests: (1) Form I-200 warrants (Warrant of Arrest), which are used to detain non-citizens suspected of violating immigration laws; and (2) Form I-205

8

a non-citizen at any and all points into the indefinite future, with no expiration. Respondents, however, direct this Court to no legal authority that supports their proposition that Form I-205 Warrants have some evergreen, non-expiring quality, and the Court is aware of none. Indeed, the authority of which the Court is aware undermines such a proposition. *See Ahmed S. v. Blanche*, No. 26-CV-2265 (KMM/DLM), 2026 WL 1998718, at *5 (D. Minn. July 10, 2026) (rejecting Respondents' contention that a years-old Form I-205 Warrant, which had already been executed in a non-citizens initial detention in 2014, can be resuscitated to authorize an arrest, especially where Respondents themselves do not contend that the arrest was made pursuant to the Form I-205 warrant); *Ger V. v. Mullin*, No. 26-CV-2543 (KMM/DTS), 2026 WL 1847044, at *4 n.5 (D. Minn. June 26, 2026) ("[C]oncerns with relying on a 25-year-old, possibly-already-executed, and possibly-never-served warrant of removal to establish the legality of this arrest are self-evident."). Here, the Form I-205 Warrant at issue (Doc. No. 6-5) was issued five years before Manuel P.'s arrest last month, and it was already used as the basis for his initial detention on June 4, 2021. Absent some binding legal authority that establishes that Form I-205 warrants are always and forever valid, the Court concludes Manuel P.'s arrest was not lawful.

Second, nothing in the evidentiary record supports the theory that any officer arresting Manuel P. in July 2026 actually believed that their authority to arrest came from the June 2021 Form I-205 Warrant. In the Petition, Manuel P. asserts that he was not

---

warrants (Warrant of Removal/Deportation), which are used to detain non-citizens subject to a final order of removal. *See* 8 C.F.R. §§ 236.1(b) (Form I-200), 241.2–.3 (Form I-205).

shown a warrant before or during his arrest, and Respondents do not contend or otherwise provide evidence that the Form I-205 Warrant was ever shown to Manuel P. at any time or that arresting officers even knew about the existence of the Form I-205 Warrant. (Doc. Nos. 6, 7.) Therefore, even on the curated facts in Respondents' papers, Respondents fall short of showing "why the writ should not be granted."[10] (*See* Doc. No. 3.)

Third, the June 2021 Form I-205 Warrant cannot justify the July 2026 arrest of Manuel P. because subsequent to the issuance of that Form I-205 Warrant, Respondents released Manual P., and they have not revoked that release order. As noted above, Respondents conspicuously omit from their argument and their response any mention of this release, which undoubtedly occurred. The Court concludes that, because Respondents decided to order the release of Manuel P. after issuing the Form I-205 Warrant, the procedural protections set forth in 8 C.F.R. § 241 apply. If a non-citizen is released after a final order of removal is issued, Respondents can revoke that release in only two circumstances: (1) upon a violation of conditions supervised release; or (2) upon a showing of changed circumstances. *Id.* § 241.13(i). In either case—violation of supervised release or changed circumstances—the regulations require ICE to notify the non-citizen "of the

---

[10] To the extent that portions of Respondents' written submissions can be construed as advancing an argument that Respondents need not respond or come forward with evidence because the burden of proving the unlawfulness of detention rests with Petitioner, the Court disagrees. Such an argument misapprehends the parties' relative responsibilities in a proceeding under 28 U.S.C. § 2241. The statute provides that the Court may grant the writ without a response from Respondents "or" (as the Court did here) may "issue an order directing the respondent[s] to show cause why the writ should not be granted." 28 U.S.C. § 2243. Such orders to show cause impose a responsibility on Respondents to come forth with evidence to justify the lawfulness of their actions.

10

reasons for revocation of his or her release" and to conduct an initial informal interview promptly after the non-citizen's return to custody to afford them an opportunity to respond to the reasons for revocation set forth in the notification. *Id.* § 241.13(i)(3). Section 241.13 also places the burden on Respondents to establish that "changed circumstances" justify the revocation of release. *Roble v. Bondi*, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025); *Escalante v. Noem*, No. 9:25-CV-0182 (MJT), 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025); *Nguyen v. Hyde*, No. 25-CV-11470 (MJJ), 2025 WL 1725791, at *3 n.2 (D. Mass June 20, 2025). Because they elected to ignore the fact that Manuel P. had been ordered released in 2021, Respondents made absolutely no argument that there has been a violation of any conditions of that release, that any changed circumstances justified Manuel P.'s re-detention, or that the decision to release Manuel P. had been revoked. Thus, Manuel P.'s re-detention is in violation of DHS's own regulations, namely 8 C.F.R. § 241.13(i). *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954) (providing that executive branch agencies must comply with their own regulations).[11]

In sum, Respondents have identified no lawful basis to arrest and detain Manuel P., and he is entitled to release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its

---

[11] The Court is also persuaded by the analysis and the conclusion in *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 & n.22 (S.D.N.Y. Nov. 26, 2025) that Respondents violated the Due Process Clause when they re-detained the petitioner without complying with regulations governing re-detention after release. This persuasive analysis compels the same result here: Respondents' arrest and detention of Manuel P. violates the Due Process clause because Respondents have failed to comply with applicable regulations necessary to revoke the decision to release Manuel P.

core a remedy for unlawful executive detention.  The typical remedy for such detention is, of course, release.").[12]

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT the Petition (Doc. No. 1) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Manuel P. <u>immediately</u>, subject to the same terms and conditions previously ordered, and in any event no later than <u>4:00 p.m. CT on August 8, 2026</u>.

2. On or before <u>11:00 a.m. CT on August 10, 2026</u>, counsel for Respondents shall file a letter affirming that they have released Petitioner Manuel P.

3. On or before <u>11:00 a.m. CT on August 10, 2026</u>, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation).  Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589.  If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property."  If Respondents

---

[12] Although the Court need not address the question of whether Manuel P.'s detention violates the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due-process factors tip in Manuel P.'s favor.  Manuel P. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting); the risk of erroneous deprivation through incarceration is needlessly high when available and inexpensive procedures protect against erroneous deprivations of liberty; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community.  Thus, Manuel P's ongoing detention is also unlawful for this reason as well. *See, e.g.*, *R.M. v. Blanche*, No. 26-CV-2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4.    Petitioner Manuel P. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5.    To the extent Petitioner Manuel P. seeks additional relief, the Petition is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  August 7, 2026                                  /s/ *Jeffrey M. Bryan*
                                                        Judge Jeffrey M. Bryan
                                                        United States District Court